IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TAMRA RENEE GUEST-WHITE                                           PLAINTIFF

V.                                                      CAUSE NO.: 1:14CV172-SA-DAS

CHECKER LEASING, INC., and
JOEL G. SHORES, in his individual capacity                        DEFENDANTS

MEMORANDUM OPINION

Defendants filed a motion [72] seeking summary adjudication of Plaintiff's claims for sex-based wage discrimination, punitive damages, and all other remaining claims. After reviewing the motion, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff was a long-time employee of Checker Leasing, a vehicle leasing business operating under the name Avis Rent A Car System, LLC, and Capital Budget Rent A Car System, Inc. At the time of her discharge, Plaintiff was a regional manager over facilities in Mississippi and Kentucky – Greenville, Starkville, Meridian, Columbus, and Paducah, Kentucky.

Plaintiff contends that because she complained about Defendants' falsification of tax records, and repeatedly opposed terminating the black manager of the Meridian facility, she was demoted then discharged.

Plaintiff filed a Charge with the EEOC and received her right to sue letter. She brings this cause of action against Checker Leasing for the following:

   a. Violation of the Equal Pay Act;

   b. Retaliation because she opposed race discrimination; and

   c. Discharge in violation of Mississippi public policy.

Plaintiff additionally brings suit individually against Joel Shores for malicious interference with employment "since he caused Plaintiff's wages to be decreased so as to force her out of the company, and because of her opposition to race discrimination."

Defendants seek summary judgment on all claims.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute

for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

1. **Equal Pay Act**

The Equal Pay Act, 29 U.S.C. § 206(d), was enacted by Congress as an amendment to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and requires that all persons performing equal work must receive equal pay, unless a difference in pay is justified by a consideration other than gender. To establish a prima facie case under the EPA, White must show: "1. [that Checker Leasing] is subject to the Act; 2. [White] performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. [White] was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986) (footnote omitted)). White must show that any pay disparity is a result of sex and cannot be attributed to any other factor, and she must also show that her male comparator held a position that required virtually identical skills, effort, and responsibilities. *See* 29 U.S.C. § 206(d)(1); *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973).

"If the plaintiff meets this burden, the burden of proof 'shifts to the employer to show that the differential is justified under one of the Act's four exceptions.'" *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)) (unequal pay under EPA and Title VII). These exceptions are: the pay differential is based on (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential

based on any factor other than sex. 29 U.S.C. § 206(d) (1); *Schulte v. Wilson Indus., Inc.*, 547 F. Supp. 324, 338–39 (S.D. Tex. 1982). "The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer*, 713 F.2d at 1136 (quoting *Corning Glass Works*, 417 U.S. at 197, 94 S. Ct. 2223). Although EPA claims are subject to a burden-shifting framework that is similar to the one used in Title VII claims, there is one critical difference. "In a Title VII case, the burden of persuasion always remains with the plaintiff." *Plemer*, 713 F.2d at 1136. In an EPA case, however, the defendant has the burden of persuasion if the plaintiff establishes a prima facie case. *Id.*

There is no dispute that Checker Leasing is subject to the Equal Pay Act. Additionally, Plaintiff has shown that her position required equal skill, effort, and responsibility to the other Regional Managers. The third element requires Plaintiff to name a comparator that she was paid less than. To satisfy the third element of her prima facie case, it is not necessary for White to prove that she was paid less than her comparator, Mike Evans, at the same time. *See, e.g., Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir. 1973) ("[T]he Equal Pay Act applies to jobs held in immediate succession, as well as simultaneously."); *see also, e.g., Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984) ("The analysis [under a Title VII wage discrimination case] is the same even where the two employees whose salaries are being compared are employed at different times in the same position." (citing *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 64 (5th Cir. 1980))).

The relevant comparison is between the amount White was paid in the position of Regional Manager and the amount Evans was paid when he held the position of Regional Manager. A reasonable trier of fact could find that Evans was paid more. At the time of her

discharge, White's salary was $52,000. In contrast, Mike Evans earned $62,500 as a Regional Manager.

Because a reasonable trier of fact could find that White has satisfied her obligation to establish a prima facie case, the burden of proof and production shifts to Checker Leasing to demonstrate that the pay differential is justified under one of the EPA's four exceptions. *See, e.g., Plemer,* 713 F.2d at 1136. Checker Leasing has cited Evans' prior experience in the industry as the reason for the differential in pay. Accordingly, the Court assumes Checker Leasing is proceeding under the fourth exception, "any other factor other than sex" as the basis for this alleged disparity.

"Any factor other than sex" is a general, catch-all exception to the application of the EPA. *Wojciechowski v. Nat'l Oilwell Marco, L.P.,* 763 F. Supp. 2d 832, 852 (S.D. Tex. 2011) (citing *Perales v. Am. Ret. Corp.,* 2005 WL 2367772, at *6 (W.D. Tex. Sept. 26, 2005)). "The exception has been found to apply 'when the disparity results from unique characteristics of the same job; from an individual's experience, training or ability; or from special exigent circumstances connected with the business.'" *Id.* (quoting *Perales,* 2005 WL 2367772, at *6). A pay differential based on an employer's changed financial condition can also qualify as a factor other than sex. *See, e.g., Covington v. S. Ill. Univ.,* 816 F.2d 317, 324–25 (7th Cir. 1987) (noting that district court concluded, *inter alia,* that plaintiff's low starting salary was the result of financial emergency that employer was experiencing at time she was hired, and stating in *dicta* employer's financial condition could qualify as a factor other than sex); *Joyner v. Town of Elberta,* 22 F. Supp. 3d. 1201, 1209 (S.D. Ala. 2014) (holding that town established that decision to pay male permanent police chief more than it paid female interim police chief was based on

factor other than sex where, *inter alia,* difference resulted from decline in revenue during female interim police chief's tenure).

Because a pay differential based on any other factor other than sex is an affirmative defense, Checker Leasing must meet the beyond peradventure standard to obtain summary judgment. *See Brokaw,* 780 F. Supp. 2d at 1251 (holding concerning this affirmative defense that defendant's "burden of proof is 'heavy,' in the sense that the employer 'must demonstrate that the factor of sex provided *no basis* for the wage differential.'" (quoting *Steger v. Gen. Elec. Co.,* 318 F.3d 1066, 1078 (11th Cir. 2003)). Checker Leasing has failed, however, to establish under this heavy standard that it was unable to compensate White at the same level that it had previously compensated Evans. Genuine issues of material fact exist as to the pay differential between Plaintiff and Mike Evans.

Defendant's Motion for Summary Judgment as to Plaintiff's wage discrimination claim is DENIED.

**2. Retaliation**

The *McDonnell Douglas* test is applicable to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a) by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 331 (5th Cir. 2009). Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Aryain v. Wal–Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, plaintiff must then offer evidence that the

defendant's reason is not true, but is instead a pretext for retaliation. "A plaintiff can only avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" *Nunley v. City of Waco,* 440 F. App'x 275, 280–81 (5th Cir. 2011) (quoting *Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011)). Evidence is "substantial" if it is of a quality and weight such that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.*

An employee engages "in protected activity if she has 'opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e–3(a) ].'" *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 348 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e–3(a)). To show that the activity was protected, the employee must have had "at least a reasonable belief that the practices she opposed were unlawful." *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996) (internal quotation marks omitted). The Fifth Circuit has consistently held that the making of vague complaints to an employer without reference to an unlawful employment practice does not constitute protected activity. *See, e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005); *accord Wright v. Custom Ecology, Inc.*, No. 3:11-cv-760, 2013 WL 1703738, at *7 (S.D. Miss. Apr. 19, 2013) ("Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute.") (citation omitted).

White contends that because she opposed termination of the only black manager in the company, she was retaliated against and discharged. However, Plaintiff has failed to adduce evidence that she ever opposed the termination of Sarah Dean because she was black. In fact,

when deposed on the matter of why Defendants did not like Sarah Dean, Plaintiff replied, "I can only assume" and "I believe it was because of race" based on comments made by Joel Shores and Geoff Ottoway that "[Dean] was fine as long as she was making money." When the topic was breached at their meeting on October 7, 2013, which Plaintiff surreptitiously recorded, Shores stated that Dean was not "the kind of representative[] we want to have there as far as being polite and cheerful and professional, you know." At that time, Plaintiff responded, "I understand."

No showing has been made that the Plaintiff mentioned or referenced Sarah Dean's race in any complaint to Checker Leasing prior to her termination. *Cf. Wright v. Custom Ecology, Inc.*, No. 3:11cv760-DPJ, 2013 WL 1703738, at *8 (S.D. Miss. Apr. 19, 2013) (granting summary judgment because the plaintiff failed to present evidence that his complaints referenced discrimination based on age or race); *Johnson v. Parkwood Behavioral Health Sys.*, No. 2:11cv212-SA, 2013 WL 1827585, at *5 (N.D. Miss. Apr. 30, 2013) (same where the plaintiff's complaints did not concern any practice prohibited by Title VII). As a result, Plaintiff's retaliation claims under Title VII will be dismissed.

### 3. Wrongful Termination in Violation of Public Policy

In *McArn v. Allied Bruce–Terminix Co., Inc.,* 626 So. 2d 603, 607 (Miss. 1993), the Mississippi Supreme Court announced an exception to the employment-at-will doctrine in Mississippi: "[A]n employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." The Mississippi Court of Appeals later held in *Hammons v. Fleetwood Homes of Mississippi, Inc.,* 907 So. 2d 357, 360 (Miss. Ct. App. 2005), to secure the benefit of that exception, an employee must prove that he complained of employer acts that

"warrant the imposition of criminal penalties, as opposed to mere civil penalties" which caused his discharge. The Fifth Circuit followed suit by concluding that the *McArn* exception requires that the alleged reported activity be actually criminal in nature. *Wheeler v. BL Development Corporation,* 415 F.3d 399 (5th Cir. 2005). The Court in *Wheeler* specifically denounced a good-faith standard by concluding that *Willard v. Paracelsus Health Care Corp.,* 681 So. 2d 539 (Miss. 1996) did not stand for the proposition that the *McArn* exception only requires employees to reasonably believe that the complained-of activity is criminally illegal. *Wheeler,* 415 F.3d at 403.

Plaintiff asserts that she was terminated for challenging the accounting practices of Checker Leasing for the five years prior to her discharge. In particular, Plaintiff alleges that Checker Leasing was overstating the number of vehicles at some facilities in order to make her regions appear unprofitable, and that Checker Leasing misrepresented its income to the Internal Revenue Service by duplicating depreciation on cars used by two different companies.

The elements of criminal tax evasion are (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *See Sansone v. United States,* 380 U.S. 343, 351, 85 S. Ct. 1004, 13 L. Ed. 2d 882 (1965); *see also United States v. Nolen,* 472 F.3d 362, 376 (5th Cir. 2006). "Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he *voluntarily and intentionally violated* that duty." *Cheek v. United States,* 498 U.S. 192, 201, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991) (emphasis added).

Plaintiff contends that she reported to Shores that Checker Leasing was inaccurately reporting its total income to the Internal Revenue Service. Plaintiff alleges that Checker Leasing

was duplicating the depreciation of cars used by two different companies, instead of allocating the depreciation between those two companies. Plaintiff also claims she complained to Shores that Checker Leasing was claiming depreciation for cars at her facilities that she did not have. Plaintiff failed to produce any evidence regarding these deficiencies. According to Plaintiff, corporate accountant L.C. Carr informed Plaintiff that Checker Leasing operated under two sets of books, one in-house, and one reported. Carr specifically denied that Checker Leasing operated under a two book system. Plaintiff never saw the alleged "in house books" but contends that the corporate profits and loss statements and her figures for her region did not match, and that Ottaway told her that Checker Leasing had always made money with her. Plaintiff argues the P&L Statements did not always indicate a profit for her region.

Plaintiff has not shown the existence of a tax deficiency, an element on which she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. 2548. Plaintiff has presented no evidence to support her claim that Checker Leasing was engaged in criminal tax evasion other than her unsubstantiated assertions. Conclusory allegations and unsubstantiated assertions are not appropriate rebuttals to defeat summary judgment. Summary judgment is granted.

### 4. Tortious Interference with Employment

Plaintiff asserts that Joel Shores maliciously interfered with her employment by misusing his position to demote then terminate her based on her complaints about tax evasion and opposition to race discrimination.

A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim. *See Roberson v. Winston County, Miss.,* No. 1:00CV415, 2002 WL 449667 (N.D. Miss. 2002). Mississippi law allows for recovery against

those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. *Morrison v. Mississippi Enter. For Tech.,* 798 So. 2d 567, 574 (Miss. Ct. App. 2001). Tortious interference with at-will employment can be the basis of a claim. *Levens v. Campbell,* 733 So.2d 753 (Miss.1999).

In order to prove tortious interference with a contract, the Plaintiff must show: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the Plaintiff in her lawful business; 3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred. *Morrison,* 798 So. 2d at 575. Further, the Mississippi Supreme Court has held that a "cause of action for tortious interference with a contract generally will lie against one who maliciously interferes with a valid and enforceable contract." *Levens,* 733 So. 2d at 759-60. However, a person occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with the principal's contractual relationship with a third person. *Morrison v. Mississippi Enter. For Tech.,* 798 So. 2d 567, 574 (Miss. Ct. App. 2001). (quoting *Shaw v. Burchfield,* 481 So. 2d 247, 255 (Miss. 1985)).

Thus, as a person occupying a position of responsibility as to Plaintiff's employment, Shores' actions were privileged unless they were taken in bad faith. First, bad faith raises an issue of motive. *Morrison,* 798 So. 2d at 575. It is not necessary for direct evidence to exist, such as an admission by the Defendants that they acted in bad faith. *Id.* Instead, such a conclusion generally arises as an inference from other evidence. *Id.* The conclusion, though, must be that the actor was malicious or recklessly disregarding the rights of the person injured. *Id.*; *Stephen v.*

11

*Winston County, Miss.*, No. 1:07cv118-SA, 2008 WL 4813829, at *8-9 (N.D.Miss. Nov. 4, 2008).

Plaintiff contends that Shores knew that cutting her salary, then terminating her, would cause her damage. She claims that Shores took those actions because she opposed race discrimination and tax evasion. Shores then later refused to transfer her to a more profitable region, and required her to eliminate employees, which meant she worked longer hours.

As noted above, Plaintiff's allegations as to the race discrimination and tax evasion are not supported by the evidence in this case. Looking at all the evidence as a whole, and even extrapolating inferences from that evidence, Plaintiff has failed to put forth any evidence that Shores acted in bad faith in demoting her, and ultimately terminating her.

**5. Punitive Damages**

Defendants also seek summary judgment as to Plaintiff's punitive damages claims against them. As far as the Equal Pay Act claim, the request for summary judgment for punitive damages must be granted. Although the EPA authorizes an award of liquidated damages, "in an additional equal amount" to unpaid wages, 29 U.S.C. § 216(b), it contains no other provision authorizing a punitive award. *See Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 841 (E.D. La. 2004).

*Conclusion*

Defendants' Motion for Summary Judgment [72] is GRANTED IN PART and DENIED IN PART. The Plaintiff has one remaining claim under the Equal Pay Act which will be heard by jury trial previously set.

SO ORDERED, this the 11th day of February, 2016.

                                                          **/s/ Sharion Aycock**
                                                          **U.S. DISTRICT JUDGE**